1   RANDOLPH L. HOWARD, ESQ.
    Nevada Bar No. 006688
2   F. CHRISTOPHER AUSTIN, ESQ.
    Nevada Bar No. 006559
3   **KOLESAR & LEATHAM**
    400 South Rampart Boulevard
4   Suite 400
    Las Vegas, Nevada  89145
5   Telephone:  (702) 362-7800
    Facsimile:  (702) 362-9472
6   E-Mail:    rhoward@klnevada.com
               caustin@klnevada.com
7
    Attorneys for Defendants
8
                    **UNITED STATES DISTRICT COURT**
9
                         **DISTRICT OF NEVADA**
10
                               * * *
11

12  WELLS FARGO BANK, N.A.,                    CASE NO. 2:13-cv-1561-MMD-NJK

13                Plaintiff,

14       vs.                                   **DEFENDANTS' MOTION FOR
                                               SUMMARY JUDGMENT**
15  YOEL INY and TIKVA INY, husband and
    wife; YOEL INY, as trustee of the Y&T INY
16  FAMILY TRUST AGREEMENT, dated June 8,
    1994; NOAM SCHWARTZ and RACHEL
17  ELMALAM, husband and wife; NOAM
    SCHWARTZ, as trustee of the NOAM
18  SCHWARTZ TRUST, dated August 19, 1999;
    613 INVESTMENTS, LLC, a Nevada limited
19  liability company; RONNIE SCHWARTZ, as
    trustee of the NS 1998 FAMILY TRUST;
20  RACHEL SCHWARTZ, as trustee of the
    LEENOY COREEN QUALIFIED PERSONAL
21  RETIREMENT TRUST; TRIANGLE
    TRADING, LTD,  a Nevada corporation;
22  HASKEL INY, an individual; NIRA SAYEGH,
    an individual; and DOES 1 through 100,
23  inclusive,

24                Defendants.

25

26       Defendants YOEL INY and TIKVA INY, husband and wife; YOEL INY, as trustee of

27  the Y&T INY FAMILY TRUST AGREEMENT, dated June 8, 1994; NOAM SCHWARTZ and

28  RACHEL ELMALAM, husband and wife; NOAM SCHWARTZ, as trustee of the NOAM

*KOLESAR & LEATHAM*
*400 S. Rampart Boulevard, Suite 400*
*Las Vegas, Nevada 89145*
*Tel: (702) 362-7800 / Fax: (702) 362-9472*

SCHWARTZ TRUST, dated August 19, 1999; 613 INVESTMENTS, LLC, a Nevada limited liability company; RACHEL SCHWARTZ, as trustee of the LEENOY COREEN QUALIFIED PERSONAL RESIDENCE TRUST (incorrectly named the LEENOY COREEN QUALIFIED PERSONAL RETIREMENT TRUST in the Complaint); TRIANGLE TRADING, LTD, a Nevada corporation; HASKEL INY, an individual; and NIRA SAYEGH, an individual (collectively, the "Defendants"), and through their undersigned attorneys of the law firm Kolesar & Leatham, hereby submit their Motion for Summary Judgment with respect to each of the claims set forth in the Complaint, as set forth below.

This Motion for Summary Judgment (the "Motion") is made pursuant to Fed. R. Civ. P. 56, N.R.S. § 40.495(1), and is based upon the memorandum of points and authorities set forth below, the exhibits attached hereto, the papers, records and pleadings on file with the Court, and any oral argument entertained by the Court at a hearing on this Motion.

DATED this 24th day of December, 2013.

KOLESAR & LEATHAM

By _Randolph L. Howard_

RANDOLPH L. HOWARD, ESQ.
F. CHRISTOPHER AUSTIN, ESQ.
400 South Rampart Boulevard
Suite 400
Las Vegas, Nevada  89145

Attorneys for Defendants

## MEMORANDUM OF POINTS AND AUTHORITIES

### I

### STATEMENT OF THE ISSUES

This Motion raises two straightforward legal issues:

1. Is the alleged debt of the Guarantor-Defendants enforceable under applicable law?

2. In the absence of any enforceable debt, can Plaintiff maintain its action for allegedly fraudulent transfers?

The answer to both of the above questions, as demonstrated below and as a matter of law,

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1   is an unequivocal and resounding: No.

## II

## BACKGROUND

Plaintiff alleges in this diversity action that it made two separate loans secured by California real property (the "Loans"), each of which was guarantied by Defendants YOEL INY and TIKVA INY, husband and wife; YOEL INY, as trustee of the Y&T INY FAMILY TRUST AGREEMENT, dated June 8, 1994; NOAM SCHWARTZ and RACHEL ELMALAM, husband and wife; and NOAM SCHWARTZ, as trustee of the NOAM SCHWARTZ TRUST, dated August 19, 1999 (collectively, the "Guarantor-Defendants"). As alleged by Plaintiff, these loans are:

1.      A loan to GAC Storage El Monte (the "GAC Loan"), elsewhere alleged by Plaintiff to have been secured by real property in Los Angeles County, California (the "GAC Property"); and

2.      A loan to The Makena Great American Anza Company, LLC (the "Makena Loan"), secured by real property in Orange County, California (the "Makena Property").

Plaintiff further alleges that each of the Guarantor-Defendants executed an "Unconditional Guaranty" relating to each of the Loans (collectively, the "Guaranties"). Plaintiff further alleges that each of the borrowers under the Loans defaulted on their obligations in connection therewith.

Because of those alleged defaults, on or about June 19, 2012, Plaintiff commenced an action against the Guarantor-Defendants the Superior Court of Maricopa County, Arizona, seeking to enforce the Guaranties (the "Arizona Action"), which remains pending.

While the Arizona Action was pending, and following a dismissal of the two bankruptcy cases of both GAC and Makena, Plaintiff ultimately completed non-judicial foreclosure sales of the real property securing the Loans (collectively, the "Properties") under California law. On May 9, 2013, the GAC Property was sold by non-judicial foreclosure to Pacifica El Monte LLC for a successful bid of $10,001,000.00, and on May 9, 2013, the Makena Property was sold by

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1  non-judicial foreclosure to 123 Westminster Storage, LLC for the successful bid of
2  $11,550,000.00. No action was ever commenced against either the two borrowers to enforce any
3  deficiency claim. True and correct copies of the Trustee's Deeds Upon Sale Sales recorded in
4  connection with the Properties are attached hereto as **Exhibits "1"** and **"2"**, respectively.[1]

5      On August 28, 2013, Plaintiff commenced the instant action, seeking a judicial
6  determination that certain transfers alleged to have been made/received by the Defendants were
7  fraudulent in light of the Guarantor-Defendants' alleged debt to Plaintiff.

8      This is actually the *sixth* separate legal proceeding on the two alleged debts, apart from
9  the two non-judicial foreclosures, including an *identical* action to this one, filed in the Superior
10  Court of Los Angeles, County, California, on April 19, 2013.

11      An essential element of a cause of action for fraudulent transfer is the existence of a valid
12  debt held by a creditor. In this case, however, as will be further discussed below, any liability
13  that the Guarantor-Defendants might once have had to Plaintiff has been extinguished as a matter
14  of law. As there is no debt, there is obviously no basis for an enforceable claim for fraudulent
15  transfer. Thus, even if the Court accepts all of Plaintiff's factual allegations as true, a complete
16  defense is manifest as to each of Plaintiff's claims, and the Defendants are entitled to summary
17  judgment with respect to each and every claim in the Complaint.

### III

### LEGAL AUTHORITY

**A.  General Standards.**

   1.  Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides:

> (a)…The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law…

//

---

[1] The Defendants respectfully request that the Court take judicial notice of these public records pursuant to Fed. R. Evid. 201(b). *See, e.g., Outten v. Bank of New York Mellon*, 2013 WL 6086899, *1 (C.D. Cal. 2013) ("Trustee's deed upon sale and other recorded documents were "public records, the authenticity of which is capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned.").

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

The United States Supreme Court has made clear that "Rule 56 should not be regarded as a 'disfavored procedural shortcut' but instead 'as an integral part of the ... Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Indeed, in *Celotex*, the United States Supreme Court held that a defendant moving for summary judgment need only demonstrate, by "showing," that there is an absence of evidence to support any one of the *prima facie* elements of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). As explained in *Celotex*:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* at 322-23.

In this case, with respect to the discrete issues discussed below, there is no genuine dispute as to any material fact that would prevent this Court's summary adjudication, as Plaintiff is precluded from any further enforcement of the Guaranties against the Guarantor-Defendants with respect to the GAC and Makena Loans. That conclusion likewise provides a complete defense to each of the fraudulent transfer claims.

2.   Standard for Determining Choice of Law.

Since *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), it has been the rule that, in cases brought in United States District Court based upon its diversity jurisdiction, "the law to be applied in any case is the law of the state" in which the action is brought. *Id.* at 78.

This Court must therefore turn to the laws of Nevada to determine the correct law to apply in this case.

//

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1    In *Sievers v. Diversified Mtg. Investors*, 95 Nev. 811, 603 P.2d 270 (1979), the Nevada

2    Supreme Court expressed Nevada's general choice of law rule as follows:

3    It is well settled that the expressed intention of the parties as to the
     applicable law in the construction of a contract is controlling if the
4    parties acted in good faith and not to evade the law of the real situs
     of the contract.   Under choice-of-law principles, parties are
5    permitted within broad limits to choose the law that will determine
     the validity and effect of their contract.

6

7    *Sievers*, 95 Nev. 815, 603. P.2d at 273 (internal citations omitted).

8    *Sievers*, however, went on to articulate two important exceptions to the general rule that

9    the choice of law identified by the agreement governs the parties' relationship:

10   [1] The situs fixed by the agreement, however, must have a
     substantial relation with the transaction, and [2] the agreement
11   must not be contrary to the public policy of the forum.

12   Thus, a court sitting in Nevada is only required to apply the law of the state specified in

13   the agreement if: (1) that state as a substantial relation with the transaction; and (2) it would not

14   offend Nevada's public policy to do so.

15   In this case, section 11(c) of each of the Guaranties executed by the Guarantor-

16   Defendants, provides that "this Guaranty shall be governed by and construed under the laws of

17   the State of Arizona without regard to conflict of laws principles."   Copies of the Guaranties for

18   each of the GAC and the Makena Loans are attached hereto as composite **Exhibits "3"** and **"4"**[2],

19   respectively.

20   The Deeds of Trust by which the Properties were pledged as security for their respective

21   Loans provide (in Section 24):

22   THIS DEED OF TRUST SHALL BE GOVERNED BY AND
     CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE
23   STATE OF ARIZONA WITHOUT GIVING EFFECT TO
     CONFLICT OF LAWS PRINCIPLES, EXCEPT WHERE THE
24   LAWS OF THE STATE OF CALIFORNIA ARE REQUIRED TO
     GOVERN THE ENFORCEMENT OF THE SECURITY OF THE
25   OBLIGATIONS SECURED HEREBY.

26   //

27

28   [2] Plaintiff has produced copies of the guaranties in the pending Arizona action, Exhibits 3 and 4, and by signing this
     motion defense counsel authenticates the exhibits so produced. FRCP 11.

1    True and correct copies of the Deeds of Trust for each of the GAC and Makena Loans are

2    attached hereto as **Exhibits "5"** and **"6"**, respectively.[3]

3        Thus, the Guaranties provide for the application of Arizona law, while the Deeds of Trust

4    provide for the application of California foreclosure, law, and for other issues to be governed by

5    Arizona law.[4]

6    **B.   The Alleged Debt of the Guarantor-Defendants Is Legally Unenforceable.**

7        Plaintiff completed its non-judicial foreclosure of both the GAC and Makena Properties

8    on May 9, 2013, in California.  As discussed below, by electing to foreclosure non-judicially and

9    failing to preserve any deficiency rights against the borrowers, Plaintiff has destroyed the

10   Guarantor-Defendants' rights of subrogation against GAC and Makena.  Those rights were

11   inadequately waived in the Guaranties, and even if they *had* been properly waived, such waiver

12   would be unenforceable as violative of Nevada's public policy.  Having destroyed the Guarantor-

13   Defendants' rights of subrogation, the Guarantor-Defendants are exonerated from any further

14   liability under the Guaranties.

15       A discussed above, the relevant provision of both Deeds of Trust provide that they are to

16   be "governed by and construed in accordance with the laws of the State of Arizona without

17   giving effect to conflict of laws principles, except where the laws of the State of California are

18   required to govern the enforcement of the security of the obligations secured hereby." *Deeds of*

19   *Trust*, section 24.

20   //

21       1.  <u>Plaintiff Is Not Entitled to a Deficiency Judgment Against GAC and Makena.</u>

22           a.   California Law

23       Under Cal. Civ. Pro. Code § 580d, "no deficiency shall be owed or collected, and no

---

[3] The Defendants respectfully request that the Court take judicial notice of these public records pursuant to Fed. R. Evid. 201(b).  *See, e.g., Smith v. SunTrust Mortg. Inc.,* 2013 WL 5305651, *1 (C.D. Cal. 2013) (deed of trust and other recorded documents were the appropriate subjects of judicial notice).

[4] For purposes of this Motion only, and except as expressly stated herein, the Defendants concede that the law of the State of Arizona applies to the guarantees.  Accordingly, this Motion presents no factual issues as to the appropriate choice of law.  In the event that this case proceeds to trial, however, the Defendants expressly reserve all factual issues bearing upon the appropriate choice of law.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

deficiency judgment shall be rendered for a deficiency on a note secured by a deed of trust or mortgage on real property or an estate for years therein executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust."[5]

Plaintiff's non-judicial foreclosure of the Properties has therefore resulted in its loss of the ability to seek a deficiency judgment against GAC and Makena for any balance that would otherwise have remained owing on the Loans as a matter of California law.

Moreover, the State of California's absolute bar to seeking a deficiency judgment against the borrower following a non-judicial foreclosure would apply in this case notwithstanding any other references to Arizona law.

In *SBKC Service Corp. v. 1111 Prospect Partners, L.P.*, 969 F. Supp. 1254, 1263 (D. Kan. 1997), the court was faced with a deficiency action following the non-judicial foreclosure of a California property.  The court concluded that where the deed of trust provided for a bifurcated choice of law similar to the one in this case, with California law to govern the foreclosure aspects, California law would also be applied to prohibit seeking a deficiency against the borrower.  The court explained:

> The court concludes that California law applies. Cal.Civ.Pro.Code § 580d is entitled "Foreclosure under power of sale; no deficiency judgment; exceptions." Based on the clear reference to foreclosure

---

[5]  Cal. Civ. Pro. Code § 580d was amended by the California Legislature on July 11, 2013, pursuant to 2013 Cal. Legis. Serv. Ch. 65 (S.B. 426). This amendment, *inter alia*, added the following provision:

> (b)  The fact that no deficiency shall be owed or collected under the circumstances set forth in subdivision (a) does not affect the liability that a guarantor, pledgor or other surety might otherwise have with respect to the deficiency, or that might otherwise be satisfied in whole or in part from other collateral pledged to secure the obligation that is the subject of the deficiency.

Notwithstanding the addition of subsection (b), however, Section 1 the bill provides that "[t]he Legislature finds and declares that this measure is not intended to and does not impact existing law regarding the liability a guarantor, pledgor or other surety may have with respect to a deficiency, nor does it impact existing law regarding other collateral pledged to secure an obligation that is the subject of a deficiency."

Accordingly, it was the clearly-expressed intent of the California Legislature to preserve the well-established existing law articulated in *Union Bank v. Gradsky*, 71 Cal. Rptr. 64 (Ct. App. 1968) and its progeny, as discussed above.

More importantly, however, the non-judicial foreclosures of the Properties occurred prior to the passage of the amendment, and would therefore be unaffected by the amendment.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

in the statute's title, it is apparent that § 580d is part of California's real estate foreclosure law by which the parties agreed to be bound, and the plaintiff offers no persuasive argument to the contrary. Furthermore, the existence of a purported waiver of California's anti–deficiency laws contained in the agreement to extend the Note is an indication that the parties believed that § 580d was applicable under the choice of law clauses contained in the Note and Deed of Trust. Thus, the court concludes that ¶ 11.12 of the Deed of Trust requires the application of § 580d as part of California's real estate foreclosure law and, if there were nothing further, the plaintiff would be precluded from recovering a deficiency in this matter.

Accordingly, under California law, Plaintiff is barred from seeking a deficiency against either GAC or Makena.

b.   Arizona Law

Even if Arizona law were to apply to a deficiency action brought by Plaintiff, Plaintiff is barred from seeking a deficiency against either of the borrowers as well.

Under A.R.S. § 33-814(A), "within ninety days after the date of sale of trust property under a trust deed pursuant to § 33-807, an action may be maintained to recover a deficiency judgment against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security including any guarantor of or surety for the contract and any partner of a trustor or other obligor which is a partnership."

Subsection (D) of that statute provides that "[i]f no action is maintained for a deficiency judgment within the time period prescribed in subsections A and B of this section, the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the obligation and no right to recover a deficiency in any action shall exist."

In this case, the deadline for Plaintiff to have commenced a deficiency action against either GAC or Makena would have been August 7, 2013. Having failed to do so, Plaintiff is irrevocably barred from seeking a deficiency judgment against the borrowers under Arizona law.

c.   Nevada Law

Nevada law similarly provides that "upon application of the judgment creditor or the beneficiary of the deed of trust within 6 months after the date of the foreclosure sale or the trustee's sale held pursuant to NRS 107.080, respectively, and after the required hearing, the

court shall award a deficiency judgment to the judgment creditor or the beneficiary of the deed of trust…" N.R.S. § 40.455(1).

Thus, the deadline for Plaintiff to have commenced a deficiency action against either of the borrowers under Nevada law would have been November 9, 2013. Having failed to do so, Plaintiff is irrevocably barred from seeking a deficiency judgment against the borrowers under Nevada law.

Accordingly, whether California, Arizona or Nevada law applies, Plaintiff is absolutely barred from seeking a deficiency judgment against either GAC or Makena – whether because its nonjudicial foreclosure itself destroyed the right to pursue such a deficiency, or due to the expiration of the relevant deadline by which such an action must have been brought.

2. Plaintiff Has Destroyed Any Rights of Subrogation Available to Guarantor-Defendants' Against GAC and Makena.

Plaintiff having destroyed the right to seek a deficiency judgment against the borrowers, the Guarantor-Defendants, who would have succeeded to Plaintiff's rights against GAC and Makena pursuant to their rights of subrogation, are now faced with the reality that, if Plaintiff obtains a judgment against them on account of the Loans and the Guarantor-Defendants are required to satisfy that judgment, they will have no recourse against the borrowers.

As discussed below, it is well-settled law that a lender may not simultaneously destroy a guarantor's rights of subrogation and still seek to recover from that guarantor. Destruction of the Guarantor-Defendants' rights of subrogation therefore exonerates the Guaranties as a matter of law.

It has long been held that a secured lender may not destroy a guarantor's rights of subrogation. *See, e.g., Union Bank v. Gradsky*, 71 Cal. Rptr. 64 (Ct. App. 1968).

In *Gradsky*, the court held that, because there is no right to a deficiency against the borrower under California law, the guarantors' rights of subrogation had been destroyed where a lender proceeded with a non-judicial foreclosure, as that action left the potentially-subrogated guarantor without recourse against the borrower. Accordingly, *Gradsky* affirmed the trial court's dismissal of the action against the guarantor. *Id.* at 70.

Similarly, in *D. W. Jaquays & Co. v. First Sec. Bank*, 419 P.2d 85, 88 (Ariz. 1966). The Arizona Supreme Court held that where a guarantor's right of subrogation was destroyed, the guarantor would be "released from that liability to the extent of the injury caused by the [destruction of the right of subrogation]."

Although the Nevada Supreme Court has not directly addressed a situation in which the lender has destroyed a guarantor's right of subrogation, its decision in *First Interstate Bank of Nevada v. Shields*, 102 Nev. 616, 730 P.2d 429 (1986) implicitly recognizes that a guarantor's right of subrogation is a key ingredient of the package of rights and protections to which a guarantor is entitled. Thus, in *Shields*, the court explained:

> [I]f a guarantor were obligated to pay the judgment for the deficiency, the debtor arguably could be obligated to reimburse the guarantor for amounts paid on the debtor's behalf. Thus, unless the guarantor were entitled to the protection of the deficiency judgment laws, the debtor might be indirectly subject to the payment of the deficiency that the statutes were designed to prevent…
>
> Although the maker of the note would likely assert the deficiency statute as a defense against the guarantor, if successful *the result would be to subject the guarantor to a defense which he never contemplated, and which does not result from his own actions, but from the creditor's neglect [or imposition]*.

*Shields*, 102 Nev. at 620, 730 P.2d at 432 (internal citations omitted; emphasis added).

Although the ultimate holding in Shields was to extend the protections of Nevada's statutory limitations on deficiency judgments to guarantors, implicit in its holding was that the guarantors' rights of subrogation must be preserved. Thus, it is similarly clear under Nevada law that destroying a guarantor's rights of subrogation is an unacceptable result, and one from which a guarantor is to be protected.

Nothing less is required on the facts of this case. There is no dispute that Plaintiff non-judicially foreclosed upon the Properties. Further, there can be no genuine dispute that Plaintiff has not commenced and is now barred from filing a deficiency action against either GAC or Makena. There can be no dispute that, were the Guarantor-Defendants to be subrogated to Plaintiff's position, they too would be barred from seeking any recovery from GAC or Makena. This destruction of the Guarantor-Defendants' rights of subrogation exonerates them from any

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

further liability under the Guaranties.

       3. <u>The Guarantor-Defendants' Purported Waivers of their Rights of Subrogation Are Not Enforceable.</u>

          *a. Nevada's public policy prohibits a pre-default waiver of the right of subrogation.*

Irrespective of the choice of law ultimately adopted by the Court, matters of public policy are an *exception* to the general rule that choice-of-law provisions in contracts are enforceable. Thus, the Nevada Supreme Court has stated:

> "[P]arties are permitted within broad limits to choose the law that will determine the validity and effect of their contract." *Sievers v. Diversified Mtg. Investors*, 95 Nev. 811, 815, 603 P.2d 270, 273 (1979). *Sievers* imposed two requirements for the validity of a choice of law provision: "The situs fixed by the agreement ... must have a substantial relation with the transaction, and the agreement *must not be contrary to the public policy of the forum.*" *Id.*

*Pentax Corp. v. Boyd*, 111 Nev. 1296, 1299, 904 P.2d 1024, 1026 (Nev. 1995) (emphasis added). *See also Sotirakis v. United Service Auto. Ass'n,* 106 Nev. 123, 124, 787 P.2d 788, 789 (Nev. 1990); *Daniels v. National Home Life Assur. Co.*, 103 Nev. 674, 747 P.2d 897 (Nev. 1987) (term in life insurance policy purchased by Nevada resident from Pennsylvania insurer, which did not provide for notice prior to termination for failure to pay premium when due, was against public policy of Nevada and unenforceable).

It is thus black letter law that a court sitting in the State of Nevada is only required to apply Arizona law pursuant to such a provision to the extent that it would not offend the State of Nevada's public policy to do so.

In this case, N.R.S. § 40.453 provides as follows:

> Except as otherwise provided in NRS 40.495:
>
> 1. It is hereby declared by the Legislature to be *against public policy* for any document relating to the sale of real property to contain any provision whereby a mortgagor or the grantor of a deed of trust *or a guarantor or surety of the indebtedness secured thereby*, waives any right secured to the person by the laws of this state.
>
> 2. A court *shall not enforce* any such provision.

[Emphasis added.]

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1    N.R.S. § 40.495 then expressly provides that a guarantor may waive its right of

2    subrogation "only after default"; i.e., not in the underlying guaranty itself.    Importantly, the

3    language of N.R.S. § 40.453 that includes a guarantor or a surety within its protections was

4    added by SB 359 in the 1987 amendments to the Nevada Revised Statutes – simultaneously with

5    the subrogation provisions set forth in N.R.S. §§ 40.465 through 40.495(1) themselves.    The

6    legislative history surrounding these amendments makes clear that the Nevada Legislature was

7    concerned with a lender's ability to strip away the protections and rights available to guarantors

8    by requiring waivers of all such rights in the loan documents as a condition to making the loan.

9    Accordingly, and to address these concerns, the guarantor subrogation statutes were enacted, and

10    accompanied by an extension of the Nevada's anti-waiver statute to guarantors – all as a matter

11    of public policy. *See* Nev. Sen. 359, Leg. Hist., 46th Sess. (1987).

12    Since, Nevada law provides that, as a matter of public policy, the pre-default waiver of a

13    guarantor's right of subrogation is unenforceable, a contrary rule from another jurisdiction is not

14    enforceable, and it is Nevada law that governs attempts to enforce such a waiver.    In short,

15    Plaintiff's failure to pursue an action for a deficiency against GAC and Makena exonerates the

16    Guaranties.

17               b.    *Even if a clear waiver of the Guarantor-Defendants' rights of
18                     subrogation would otherwise be enforceable, the waivers contained
                       within the Guaranties are inadequate.*

19    The most explicit waiver contained within the Guaranties is set forth in Section 5(i), and

20    provides as follows:

21               Guarantor waives and releases the following rights, demands, and
22               defenses Guarantor may have with respect to Bank…and collection
                 of the Guaranteed Obligations: (i) Any right to which Guarantor is
23               or may become entitled to be subrogated to Bank or its affiliates'
                 rights against Borrower or to seek contribution, reimbursement,
24               indemnification, payment of the like, or participation in any claim,
                 right or remedy of Bank or its affiliates against Borrower or any
25               security which Bank or its affiliates now has or hereafter acquires,
                 until such time as the Guaranteed Obligations have been fully
26               satisfied beyond the expiration of any applicable preference period.

27    However, as the court held in *Union Bank v. Gradsky*, 71 Cal. Rptr. 64, 70 (Ct. App.

28    1968):

1549642 (8237-23)                       Page 13 of 18

> The language of the guarantee agreement does not specifically waive the guarantor's defense based upon an election of remedies which destroys both the guarantor's subrogation rights and his right to proceed against the principal obligor for reimbursement. In absence of an explicit waiver, we shall not strain the instrument to find that waiver by implication.

The extent to which the waiver discussed in *Gradsky* must be explicitly disclosed was further developed in *Resolution Trust Corp. v. Titan Financial Corp.*, 22 F.3d 923, 924-25 (9th Cir. Nev. 1994), in which the court explained as follows:

> In *Cathay Bank*, the court held that even though the "*Gradsky* defense" may be waived by a guarantor, …the waiver must be explicit.
>
> *Cathay Bank* is controlling authority that the waiver language of the guaranty signed by Sellan was not sufficiently explicit to waive his *Gradsky* defense. *Cathay Bank* establishes that the waiver language must do more than tell the guarantor that he may lose subrogation rights; it must explain "that if the lender selects nonjudicial foreclosure, he or she will have a defense to a deficiency judgment [the *Gradsky* defense], and it is that defense which the guarantor is now being asked to give up in advance." … In other words, the waiver language must tell the guarantor that he has a *Gradsky* defense.

In *Titan Financial Corp*, the Ninth Circuit ultimately concluded that the waiver in that case – which was virtually identical to the above waiver in the Guaranties – was not sufficiently explicit to validly waive the guarantor's *Gradsky* defense. *Id.* at 925.

Arizona similarly requires that waivers of rights of subrogation be clear and unambiguous. "The doctrine of subrogation arises not from contract but from principles of equity." *First Sec. Bank*, 419 P.2d at 88. "If the destruction or impairment of such a right is to be waived by a guarantor, it should only be by the most unequivocal language in the guarantee agreement. The right does not originate in contract, and it cannot lightly be destroyed by contract." *Id.*

Moreover, the waivers in the Guaranties are actually not really waivers at all, inasmuch as Section 5(i) of the Guaranties actually *preserves* at least a "springing" right of subrogation once "the Guaranteed Obligations have been fully satisfied beyond the expiration of any applicable preference period." This express language makes clear that, to the contrary:

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

Guarantor-Defendants *will* have rights of subrogation upon their payment of the Guaranteed Obligations – which is of course the very nature of a right of subrogation.

As A.R.S. § 12-1643 provides, in pertinent part:

> When a person who is surety on an undertaking is compelled to pay a judgment or part thereof, or makes a payment upon a judgment by reason of suretyship, such judgment shall not be discharged by such payment but shall remain in force for the use of the surety and shall be considered as assigned to the surety together with all rights of the creditor thereunder to the extent of the payment made by the surety, and interest thereon.

A.R.S. § 12-1643(A).

A right of subrogation thus does not mature until "a payment upon a judgment by reason of suretyship." A fair reading of Section 5(i) of the Guaranties *might* support the conclusion that, whereas A.R.S. § 12-1643(A) permits a right of subrogation to mature upon even a *partial* payment of a judgment, the Guaranties require that the "Guaranteed Obligations have been fully satisfied beyond the expiration of any applicable preference period" before the rights of subrogation are matured.

Thus, rather than absolutely waiving their rights of subrogation, Section 5(i) in fact *preserves* the rights of subrogation, although it makes clear that such rights are triggered only upon the full satisfaction and discharge of the Guaranteed Obligations.

Accordingly, the Guarantor-Defendants submit that the purported waivers of their rights of subrogation contained within the Guaranties are insufficient and invalid as a matter of law.

Their rights of subrogation having thus initially been preserved, notwithstanding any language in the Guaranties to the contrary, they were then destroyed by Plaintiff's election to non-judicially foreclose on the Properties. The situation with which the Guarantor-Defendants are faced is thus identical to the circumstances present in *Gradsky*. In *Gradsky*, the non-judicial foreclosure itself destroyed the ability to seek a deficiency against the borrower, thus emasculating the guarantor's right of subrogation. In this case, Plaintiff has taken action that has similarly barred it from seeking a deficiency against the borrower. The Guarantor-Defendants will have no recourse against the borrower by virtue of their rights of subrogation, as Plaintiff's actions have destroyed those rights. Accordingly, the Guaranties are exonerated.

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

C. **Since the Guaranties Have Been Exonerated, There is No Debt, and There is No Basis for a Claim for Fraudulent Transfer.**

As the Guarantor–Defendants are not liable to Plaintiff under the Guaranties, there is no "debt" that would form the basis for a claim of fraudulent transfer.

Both sections 112.180 and 112.190 of the Nevada Revised Statutes provide begin with the words: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor…"

Pursuant to N.R.S. § 112.150(6), "Debtor" means "a person who is *liable* on a claim." (Emphasis added.)

Pursuant to N.R.S. § 112.150(4), "Creditor" means "a person who *has* a claim." (Emphasis added.)

Finally, pursuant to N.R.S. § 112.150(3), "Claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." (Emphasis added.)

As demonstrated above, the Guarantor-Defendants are not "Debtors" under Chapter 112, as they are not liable to Plaintiff. Nor is Plaintiff a "Creditor" under Chapter 112, as it has no "Claim" against the Guarantor-Defendants.

Accordingly, the Defendants are entitled to summary judgment against Plaintiff on all of the claims asserted in the Complaint.

## IV

## CONCLUSION

For the aforementioned reasons, the Defendants respectfully request that this Court enter an order: (1) granting summary judgment in favor of Defendants and against Plaintiff on each and every claim asserted in the Complaint; (2) granting Defendants their attorneys' fees and costs for the claims subject to judgment as a result of this Motion pursuant to N.R.S. § 18.010(2),[6] or, in the alternative, that their claim for attorneys' fees and costs in connection with the above causes of action is expressly reserved pending further order of this Court; and (3) for such other relief as the

---

[6] *See Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050 (9th Cir. 2013) ("State law governs whether a party is entitled to attorney's fees in diversity cases such as this one").

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

1    Court deems reasonable and proper.

2          DATED this 24th day of December, 2013.

3                                    KOLESAR & LEATHAM

4

5          By ___Randolph L. Howard_____
                                   RANDOLPH L. HOWARD, ESQ.
6                                  Nevada Bar No. 006688
                                   F. CHRISTOPHER AUSTIN, ESQ.
7                                  Nevada Bar No. 006559
                                   400 South Rampart Boulevard
8                                  Suite 400
                                   Las Vegas, Nevada  89145

9                                  Attorneys for Defendants

10

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1549642 (8237-23)                    Page 17 of 18

CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Kolesar & Leatham and that on the 24th day of December, 2013, I caused to be served a true and correct copy of foregoing DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, in the following manner:

(ELECTRONIC SERVICE) Pursuant to Rule 5(D) of the Nevada Rules of Civil Procedure, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

Michael F. Lynch, Esq.
Lynch Law Practice, PLLC
8275 S. Eastern Avenue, #200
Las Vegas, NV 89123

*Attorneys for Plaintiff, Wells Fargo Bank, NA*

_____
An Employee of KOLESAR & LEATHAM

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472