Michael F. Lynch
Nevada Bar No. 8555
Lynch Law Practice, PLLC
8275 S. Eastern Avenue, Suite 200
Las Vegas, NV  89123
Telephone:   (702) 413-8282 (direct)
Fax:          (702) 543-3279
Michael@LynchLawPractice.com

Counsel for Plaintiff Wells Fargo Bank, N.A.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| Wells Fargo Bank, National Association,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Yoel Iny and Tikva Iny, husband and wife; Yoel Iny, as Trustee of the Y&T Iny Family Trust Agreement dated June 8, 1994; Noam Schwartz and Rachel Elmalam, husband and wife; Noam Schwartz, as Trustee of the Noam Schwartz Trust dated August 19, 1999; 613 Investments, LLC, a Nevada limited liability company; Ronnie Schwartz, as Trustee of the NS 1998 Family Trust; Rachel Schwartz, as Trustee of the Leenoy Coreen Qualified Personal Retirement Trust; Triangle Trading Ltd., a Nevada corporation; Haskel Iny; Nira Sayegh; and Does 1 through 100, inclusive,<br><br>　　　　　Defendants. | Case No. 2:13-cv-1561-MMD-NJK<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Wells Fargo Bank, as successor-by-merger to Wachovia Bank, N.A. (hereafter, "Wells Fargo") hereby submits its Response in Opposition to Defendants' Motion for Summary Judgment (the "Motion") (Dkt. 24).

This Opposition is made and based upon the following Memorandum of Points and Authorities, the pleadings and papers on file in this action, and any oral argument this Court may allow.

753174.3\0313491

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

This is a fraudulent transfer case. Defendants Yoel and Tikva Iny, the Y&T Iny Family Trust, Noam and Rachel Schwartz, and the Noam Schwartz Trust (collectively, "Guarantors") are the guarantors of two loans from Wells Fargo totaling in excess of $27.8 million that have fully matured and not been repaid in full. After guaranteeing these loans, and while indebted to Wells Fargo, Guarantors initiated a web of fraudulent transfers conveying millions of dollars in assets to the other named Defendants in this action. Contrary to Defendants' assertions, the Uniform Fraudulent Transfer Act requires that Wells Fargo only have a "claim" against the Guarantors in order to bring this action. Under the Uniform Fraudulent Transfer Act, a "claim" is broadly defined as any claimed right to payment whether it be disputed or undisputed, contingent or unliquidated. As the Seventh Circuit Court of Appeals explained, a creditor with a fraudulent transfer claim does not lose its status as a creditor "simply because debtor or a third party has a legal defense to the claim." DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc., 384 F.3d 338, 351 (7th Cir. 2004).

More significantly, the legitimacy of Wells Fargo's claim against the Guarantors is presently the subject of a breach of guaranty action that has been pending in Maricopa County Superior Court since 2012 as Cause No. CV2012-009373.[1] That action has progressed substantially and discovery closed on January 24, 2014. To the extent Defendants intend to argue the enforceability of their guaranty agreements, those issues are properly before the Maricopa County, Arizona Superior Court.

In any event, as Defendants admit (Motion at p. 7, fn. 4), Arizona law expressly governs the Defendants' guaranty agreements. Indeed, the underlying loans were originated and funded out of Arizona. The Arizona Court of Appeals has recently addressed the argument that Defendants raise in their motion regarding their right to

---

[1] Wells Fargo has filed this fraudulent transfer action in Nevada in order to ensure personal jurisdiction over all of the non-guarantor, fraudulent transferee, Defendants.

753174.3\0313491                                    2

subrogation, and expressly rejected precisely the same assertion. In <u>First Credit Union v. Courtney</u>, 309 P.3d 929 (Ariz. Ct. App. 2003), the Arizona Court of Appeals found that a lender could pursue a guarantor even when liability against the borrower had been extinguished or was barred because the lender had not pursued the borrower. Here, the guaranty agreements expressly provide that the Guarantors would remain liable even if Wells Fargo elected to release the borrowers or if Wells Fargo refused to pursue its remedies against the borrowers. Accordingly, Defendants' legal argument is without merit.

## II. UNDISPUTED FACTS.

### A. Guaranty Of El Monte Loan.

1. On or about February 28, 2008, Wells Fargo made a loan to GAC Storage El Monte, LLC ("GAC") as borrower in the original principal amount of $12,650,000 ("El Monte Loan").

2. The El Monte Loan was secured by, among other things, a Deed of Trust ("El Monte Deed of Trust") recorded against certain real property consisting of a self-storage unit located in El Monte, California ("El Monte Property"). A true and correct copy of the El Monte Deed of Trust is attached to the Motion as **Exhibit 5**.

3. Guarantors each executed and delivered to Wells Fargo an Unconditional Guaranty dated February 28, 2008, jointly and severally guaranteeing GAC's payment and performance of the El Monte Loan ("El Monte Guarantees"). True and correct copies of the El Monte Guarantees are attached to the Motion as **Exhibit 3**.

4. Guarantors and GAC each expressly agreed that the El Monte Guarantees and other El Monte Loan documents would be governed by Arizona law. (Motion, Ex. 3, at § 11(e); Motion, Ex. 5 at § 24)

5. As described in the El Monte Deed of Trust, the parties selected Arizona law because, among other things, the parties "conducted a substantial part of the negotiations for the transaction in the State of Arizona, the Loan has been originated and funded from the State of Arizona." (Motion, Ex. 5 at § 24)

6. Importantly, each of the El Monte Guarantees contain extensive waiver provisions that stated, among other things, that the Guarantors waived "any right to which guarantor is or may become entitled to be subrogated to the bank or its affiliated rights against the borrower. . . ." (Motion, Ex. 3 at § 5).

7. Guarantors further agreed that they would remain liable under the El Monte Guarantees even if Wells Fargo were to "settle, release, or compromise with Borrower." Id. at § 4.

### B. Guaranty Of Makena Loan.

8. On or about September 10, 2007, Wells Fargo made a loan to the Makena Great America Anza Company, LLC ("Makena") as borrower in the original principal amount of $15,150,000 ("Makena Loan").

9. The Makena Loan was secured by, among other things, a Deed of Trust ("Makena Deed of Trust") recorded against a certain self-storage facility located in Westminster, California ("Makena Property"). A true and correct copy of the Makena Deed of Trust is attached to the Motion at **Exhibit 6**.

10. Guarantors each executed and delivered to Wells Fargo an unconditional guaranty dated September 10, 2007, absolutely, irrevocably, unconditionally, and jointly and severally guaranteeing Makena's payment and performance under the Makena loan documents ("Makena Guarantees" and, collectively with the El Monte Guarantees, "Guaranty Agreements"). True and correct copies of the Makena Guarantees are attached to the Motion as **Exhibit 4**.

11. Guarantors and Makena each expressly agreed that the Makena Guarantees and other Makena loan documents would be governed by Arizona law. (Motion, Ex. 4, § 11(c); Motion, Ex. 6 at § 24).

12. As described in the Makena Deed of Trust, the parties selected Arizona law because, among other things, the parties "conducted a substantial part of the negotiations for the transaction in the State of Arizona, the Loan has been originated and funded from the State of Arizona." (Motion, Ex. 6 at § 24)

13. Importantly, each of the Makena Guarantees contain extensive waiver provisions that state, among other things, that the Guarantors waived "any right to which guarantor is or may become entitled to be subrogated to the bank or its affiliated rights against the borrower." (Motion, Ex. 4, § 5).

14. Guarantors further agreed that they would remain liable under the Makena Guarantees even if Wells Fargo were to "settle, release, or compromise with Borrower." (Motion, Ex. 4, § 4).

### C. Default, Notices Of Trustee's Sales, And Arizona Lawsuit.

15. Makena defaulted under the Makena Loan by failing to make required payments, and the Guarantors defaulted under their guarantees by failing to pay the loan in full upon Makena's default.

16. GAC defaulted under the El Monte Loan by failing to make required payments and, despite demand, Guarantors failed and refused to honor their obligations under the guarantees.

17. Wells Fargo recorded a Notice of Default and Election to Sell with regard to the El Monte Property and the Makena Property on September 8, 2010. True and correct copies of these Notices of Default and Elections to Sell are attached hereto as **Exhibits 1 and 2**, respectively.[2/]

18. On June 19, 2012, Wells Fargo filed its Complaint for breach of the GAC and Makena Guaranty Agreements against Guarantors in Maricopa County, Arizona Superior Court as Cause No. CV2012-009373 ("Arizona Action"). True and correct copies of the Complaint and Scheduling Order in the Arizona Action are attached hereto as **Exhibits 3 and 4**, respectively.[3/] The scheduling order in that matter requires all discovery to be completed by January 24, 2014.

---

[2/] Wells Fargo requests that the Court take judicial notice of these public records pursuant to Fed. R. Evid. 201(b). Disability Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866, n. 1 (9th Cir. 2004) (the court may take judicial notice of the records of state agencies and other undisputed matters of public record).

[3/] Wells Fargo requests that the Court take judicial notice of these court filings pursuant to Fed. R. Evid. 201(b). United States ex rel. Robinson Rancheria Citizens

**D.     Borrower's Bankruptcy Filings And Sale Of Property.**

19.     On October 20, 2011, GAC and Makena filed voluntary petitions under chapter 11 of the United States Bankruptcy Code in the Northern District of Illinois Bankruptcy Court as Cause Nos. 11-42638 and 11-42549, and those cases were jointly administered with certain other chapter 11 cases filed by affiliated entities under Lead Bankruptcy Case No. 11-40944.

20.     By orders dated February 11, 2013 and February 27, 2013, the Northern District of Illinois Bankruptcy Court ("Bankruptcy Court") granted Wells Fargo's motion for stay relief and expressly authorized Wells Fargo to conduct trustee's sales of the El Monte Property and Makena Property. True and correct copies of the Memorandum Opinions denying confirmation of the plans of reorganization and granting relief from the automatic stay are attached hereto as **Exhibits 5 and 6**.

21.     On May 9, 2013, trustee's sales of the El Monte Property and Makena Property were performed. True and correct copies of the trustee's deeds are attached to the Motion as Exhibits 1 and 2.

22.     On May 30, 2013, the U.S. Trustee filed Motions to Convert or Discharge the GAC Bankruptcy case and Makena Bankruptcy case on the basis that "Debtor has no remaining assets" after the foreclosures. True and correct copies of these Motions are attached hereto as **Exhibits 7 and 8**, respectively.[4]

---

Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (Federal court may "take notice of proceedings in other courts, both within and without the federal system, if those proceedings have a direct relation to the matters at issue.").

[4]     Wells Fargo requests that the Court take judicial notice of these court filings pursuant to Fed. R. Evid. 201(b). United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (Federal court may "take notice of proceedings in other courts, both within and without the federal system, if those proceedings have a direct relation to the matters at issue.").

23. By Orders dated June 26, 2013, the Bankruptcy Court dismissed the GAC Bankruptcy and the Makena Bankruptcy cases. True and correct copies of these Orders are attached hereto as **Exhibits 9 and 10**, respectively.[5]

### E. Fraudulent Transfer Action.

24. Wells Fargo filed this fraudulent transfer action on August 22, 2013, alleging that Guarantors fraudulently conveyed certain assets to related and affiliated companies while indebted to Wells Fargo.

## III. LEGAL ARGUMENT.

### A. Legal Standard.

When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial in order to establish that it is entitled to summary judgment. C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000). In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case. Rivera v. Philip Morris, Inc., 395 F.3d 1142, 1146 (9th Cir. 2005). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970).

In determining whether summary judgment is appropriate, the trial court must draw all reasonable inferences supported by the evidence in favor of the non-moving party.

---

[5] Wells Fargo requests that the Court take judicial notice of these court filings pursuant to Fed. R. Evid. 201(b). United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (Federal court may "take notice of proceedings in other courts, both within and without the federal system, if those proceedings have a direct relation to the matters at issue.").

753174.3\0313491                                    7

1 Villiarimo, 281 F.3d at 1061.  Summary judgment cannot be granted where contrary
2 inferences may be drawn from the evidence as to material issues.  Easter v. Am. W. Fin.,
3 381 F.3d 948, 957 (9th Cir. 2004) (citations omitted).  The court also must view the
4 evidence through a prism of the controlling legal standard.  Nebraska v. Wyoming, 507
5 U.S. 584, 590 (1993).

**B.    Wells Fargo Has A Claim And Is A Creditor Under The Uniform Fraudulent Transfer Act.**

The Uniform Fraudulent Transfer Act broadly defines those entitled to bring a fraudulent transfer claim as "creditors," and "creditors," in turn, are defined as any individual or entity who holds a "claim" against a debtor.  Ariz. Rev. Stat. Ann. § 44-1001(4); NRS § 112.150(4).[6/]  Importantly, the Uniform Fraudulent Transfer Act makes clear that claims broadly include any "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, **disputed**, undisputed, legal, equitable, secured or unsecured."  Ariz. Rev. Stat. Ann. § 44-1001(2); NRS § 112.150(3) (emphasis added).

Courts addressing the issue have further made clear that a "claim" exists even where the debtor has a potential legal defense and disputes the claim.  Interpreting Indiana's enactment of the Uniform Fraudulent Transfer Act, the Seventh Circuit Court of Appeals held that "a 'creditor' with a colorable claim cannot lose its status as 'creditor' under the IUFTA simply because the debtor or a third party has a legal defense to the claim."  DFS Secured Healthcare Receivable Trust, 384 F.3d at 351.  The court explained that the statutory definition of "claim" includes those claims that are "disputed."  Thus, the fact that a debtor disputes the plaintiff's claim does not change the plaintiff's status as a creditor under the Uniform Fraudulent Transfer Act.  Id.

---

[6/]    By citing Nevada law, Wells Fargo is not admitting that Nevada law is applicable. Nonetheless, Nevada and all other jurisdictions with a connection to these claims have enacted the Uniform Fraudulent Transfer Act and the provision are identical.

Here, even if facially valid (which it is not), Defendants' defense to Wells Fargo's claims under the Guaranty Agreements does not impact or affect Wells Fargo's status as a "creditor" and the propriety of this fraudulent transfer action. Under the Uniform Fraudulent Transfer Act, a claim – even if disputed – entitles a creditor to pursue a fraudulent transfer action.

### C. The Validity Of The Guaranty Agreements Is The Subject Of The Arizona Litigation.

Wells Fargo's breach of guaranty action has been pending in Maricopa County, Arizona Superior Court since June 2012. Discovery in that matter closed on January 24, 2014. Principals of judicial efficiency weigh against this Court making a ruling as to the enforceability of the Guaranty Agreements, which are governed by Arizona law, given that this precise issue is presently before the Maricopa County, Arizona Superior Court, and has been for more than a year-and-a-half.

While Defendants did not formally plead a claim for declaratory relief, Defendants' Motion effectively seeks a declaration from this Court that the Guaranty Agreements are invalid. Defendants' efforts to "forum-shop" this issue to what Defendants apparently perceive is a more friendly venue results in a waste of judicial resources and impinges upon the same basic principles that would prevent a direct declaratory judgment claim requesting that this Court rule on an issue already pending before a state court. See Brillhart v. Excess Ins. Co. Am., 316 U.S. 491, 494-495 (1942) (the district court should: 1) avoid needless determinations of state law; 2) discourage declaratory actions as a means of forum shopping; and 3) avoid duplicative litigation).

### D. Arizona Law Allows Wells Fargo To Pursue The Guarantors.

Wells Fargo filed suit in Arizona against the Guarantors in June 2012, prior to the May 9, 2013 trustee's sales.[7/] Wells Fargo did not amend its Complaint in Arizona to

---

[7/] Under Arizona law, an action brought before a trustee's sale constitutes "an action for a deficiency judgment" timely filed within the meaning of the Arizona anti-deficiency statute, A.R.S. § 33-814. Citibank (Arizona) v. Bhandusavee, 937 P.2d 356, 359-60 (Ariz. Ct. App. 1986).

1  pursue the borrowers, GAC or Makena, because Wells Fargo has foreclosed upon their
2  sole remaining asset, and those entities are effectively defunct.  Indeed, subsequent to the
3  bankruptcy court granting Wells Fargo's motion for stay relief, the court dismissed GAC's
4  and Makena's bankruptcy cases based upon unopposed motions by the U.S. Trustee stating
5  that GAC and Makena had "no remaining assets" after the foreclosures.  [Exs. 7 and 8]

6  Contrary to Defendants' erroneous assertions, Arizona law clearly allows a lender
7  to pursue a guarantor even when the lender elects not to pursue the borrower and any
8  subrogation right has been eliminated.  The Arizona Court of Appeals in First Credit
9  Union v. Courtney, 309 P.3d 929 (Ariz. Ct. App. 2013), expressly found that a guaranty
10 agreement could provide waivers that allow a lender to pursue a guarantor even after the
11 lender had waived or released its claims against the borrower.  In Courtney, the lender
12 foreclosed upon real property owned by the borrower and proceeded to file a lawsuit
13 against the guarantors only.  Id. at 931.  Ninety (90) days after the foreclosure, A.R.S.
14 § 33-814 precluded the lender from filing suit against the borrower.  The guarantor
15 defendants asserted that extinguishment of the borrowers' debt rendered the guarantees
16 unenforceable, having destroyed the guarantors' right to subrogation.  Id. at 934.  The
17 court rejected the guarantor's argument and, instead, enforced the express provisions of the
18 guaranty contract which allowed the lender to "resort for payment or to proceed directly or
19 at once against any person, including borrower."  Id. at 935.  The guaranty agreement
20 further included a waiver of any defense based upon "any election of remedies by lender
21 which destroys or otherwise adversely affects guarantor's subrogation rights."  Id.

22 As with the defendants in Courtney, the Guarantors in this case expressly agreed in
23 each of the Guaranty Agreements that Wells Fargo could pursue them "with or without
24 resort for payment to any other party."  [Motion, Exs. 3 and 4, at § 5]  Guarantors further
25 waived "any right to which Guarantors are or may become entitled to be subrogated to
26 Bank or its affiliates' rights against Borrower . . . ."  Id.  In addition, Guarantors agreed
27 that Wells Fargo could "proceed against, settle, release or compromise with Borrower"
28 without affecting Guarantors' liability under the Guaranty Agreements.  Id., Exs. 3 and 4,

1  at § 4]  Under Arizona law, the terms of the Guaranty Agreements are enforceable and
2  render Defendants' arguments in this case a nullity.

3  The only Arizona case Defendants cite, D.W. Jaquays & Co. v. First Security Bank,
4  419 P.2d 85 (Ariz. 1966), does not change this result.  Even in 1966, Arizona recognized
5  that subrogation rights could be waived in a guaranty agreement.  Id., 419 P.2d at 89.
6  Further, even if not waived, a guarantor is only entitled to a reduction in liability equal to
7  "his loss."  Id.  Here, even if the Guarantors had not waived their right to subrogation
8  (which they did), their loss would be nothing because the borrowers are without any assets.
9  [See Exs. 7 and 8]

10  **E.     Arizona Law Governs The Guaranty Agreements.**

11  In a desperate effort to avoid the clear implication of Arizona law, Defendants argue
12  that the Arizona choice of law provisions in the loan documents are void as against Nevada
13  public policy.  Under Nevada law, however, "it is well settled that the expressed intention
14  of the parties as to the applicable law in the construction of a contract is controlling if the
15  parties acted in good faith and not to evade the law of the real situs of a contract."  Key
16  Bank of Alaska v. Donnels, 787 P.2d 382 (Nev. 1990) (citing Sievers v. Diversified
17  Mortgage Investors, 603 P.2d 270, 273 (Nev. 1979)).  Nevada courts regularly enforce
18  choice of law provisions agreed to by the parties to a contract.  "Parties are permitted
19  within broad limits to choose the law that will determine the validity and effect of their
20  contract."  Pentax Corp. v. Boyd, 904 P.2d 1024, 1026 (Nev. 1995) (citations omitted).

21  Defendants have not introduced any evidence, nor did their motion for summary
22  judgment even suggest, that the parties acted in bad faith or attempted to evade the laws of
23  the situs of the contract.  Rather, the parties selected Arizona law to govern their loan
24  agreements because, among other things, the parties "conducted a substantial part of the
25  negotiations for the transaction in the State of Arizona, the Loan has been originated and
26  funded from the State of Arizona."  [Motion, Exs. 5 and 6, § 24]

27  Despite the clear choice of law provision, Defendants argue that the application of
28  Arizona law would violate Nevada public policy.  Contrary to Defendants' claims, NRS

40.453 is not so broad that it voids any choice of law provision that selects a state's law, which deviates from Nevada law.  Key Bank of Alaska v. Donnels, 787 P.2d 382 (Nev. 1990) is instructive, as it concerns a choice of law question in a loan transaction.  In Key Bank, the note was governed by Alaska law, while the deed of trust provided for foreclosure under Nevada law.  The Nevada Supreme Court upheld the Alaska choice of law provision even though it differed from Nevada's anti-deficiency statute.

Moreover, Nevada courts have recognized that NRS 40.453 should not be read so broadly to prohibit choice of law provisions:

> the language of NRS 40.453 is ambiguous to the extent that a strict application of the extremely broad language of NRS 40.453 would lead to an absurd result.  In particular, if the legislature actually intended to prohibit the waiver of any right secured by law, then such things as arbitration agreements, forum selection clauses and **choice-of-law provisions** would be unenforceable.  The Nevada Legislature could not have intended such a result when it enacted NRS 40.453.

Lowe Enters. Residential Ptnrs., L.P. v. Eighth Judicial Dist. Court, 40 P.3d 405, 412 (Nev. 2002) (emphasis added).  Even this court has found that "it cannot be a proper reading of § 40.453 that a choice-of-law provision that selects for a state whose deficiency judgment law are identical to Nevada's in all but one slightly weaker respect would be invalidated."  Behringer Harvard Lake Tahoe, LLC v. Bank of America, N.A., case no. 3:13-cv-00057, 2013 WL 4006867 at *12-13 (D. Nev. August 5, 2013)

Furthermore, Defendants' argument that a guarantor cannot prospectively waive subrogation rights is fatally flawed and lacks any legal support.  First, Defendants rely solely on NRS 40.495 to support this argument.  Yet, Defendants only cite to a portion of NRS 40.495 to claim (Motion at 13) that the statute "expressly provides that the guarantor may waive his right of subrogation 'only after default'."  Defendants ask this Court to completely ignore the following section that states that a "guarantor, surety or obligor, other than the mortgagor or grantor of a deed of trust, may waive the provisions of NRS 40.430."  Indeed, NRS 40.495 states, in pertinent part:

> 1.   The provisions of NRS 40.475 and 40.485 may be waived by the guarantor, surety or other obligor only after default.

> 2.  Except as otherwise provided in subsection 5, a guarantor, surety or other obligor, other than the mortgagor or grantor of a deed of trust, may waive the provisions of NRS 40.430. If a guarantor, surety or other obligor waives the provisions of NRS 40.430, an action for the enforcement of that person's obligation to pay, satisfy or purchase all or part of an indebtedness or obligation secured by a mortgage or lien upon real property may be maintained separately and independently from:
>
>   **(a)   An action on the debt**;
>
>   (b)   The exercise of any power of sale;
>
>   (c)   Any action to foreclose or otherwise enforce a mortgage or lien and the indebtedness or obligations secured thereby; and
>
>   (d)   Any other proceeding against a mortgagor or grantor of a deed of trust.

(emphasis added).

As previously discussed, the Guarantors each expressly waived any right they may have to require Wells Fargo to proceed first against the borrowers. NRS 40.430 is the Nevada statutory one-action rule that would have required a lender to first proceed against the borrower. Given that Nevada law allows a guarantor to waive that right, such a waiver in the Guaranty Agreements (under Arizona law) that allowed Wells Fargo to proceed against Guarantors without pursuing the bankrupt borrowers is clearly not against public policy.

Defendants have no authority for their argument. Defendants cite to only one Nevada case in support of their assertion, First Interstate Bank of Nevada v. Shields, 102 Nev. 616, 730 P.2d 429 (1986). Yet, Shields has no relevance to their argument regarding subrogation. Rather, Shields finds that guarantors of a promissory note secured by a deed of trust on real property are entitled to the protections of the deficiency judgment statutes. Id.

Defendants' citation to the California case Union Bank v. Gradzky also has no application whatsoever. The court in Gradzky expressly stated that a guarantor could prospectively waive its rights of subrogation and allow the creditor to pursue the guarantor even where recovery against the borrower is barred. 265 Cal. App. 2d 40, 48 (1968). Indeed, California has enacted a specific statutory provision that allows guarantors to prospectively waive their rights under Gradzky and any right to subrogation the guarantors

might acquire. See Cal. Civil Code § 2856. Thus, under California law, a waiver of the right to subrogation certainly is not against public policy.

The sole Nevada statute that mentions the right to subrogation, NRS 40.475, similarly recognizes that a lender may waive, release, or otherwise have limited its rights against the borrower. NRS 40.475 simply provides that, upon full payment (the Guarantors have not paid any portion of the debt in this matter), a guarantor succeeds to whatever right the lender "then has" under the loan documents. Importantly, by expressly providing that the rights were limited only to those that the lender "then has," the Nevada legislature acknowledged that a lender may have waived, released, or otherwise extinguished certain rights that may have existed previously.

## IV.    CONCLUSION.

Based on the foregoing, Plaintiff Wells Fargo respectfully requests that the Court deny Defendants' Motion for Summary Judgment.

DATED this 24th day of January, 2014.

**LYNCH LAW PRACTICE, PLLC**

By  /s/ Michael F. Lynch
Michael F. Lynch
Nevada Bar No. 8555
8275 S. Eastern Avenue, Suite 200
Las Vegas, NV  89123
(702) 413-8282 (direct)
(702) 543-3279 (fax)
Michael@LynchLawPractice.com

*Counsel for Wells Fargo Bank, N.A.*

# CERTIFICATE OF SERVICE

1. On January 24, 2014, I served the foregoing document.

2. I served the above-named document(s) by the following means to the persons as listed below:

☒ **a. ECF System:**

F. Christopher Austin caustin@klnevada.com, ccolucci@klnevada.com, usdistrict@klnevada.com

Randolph L. Howard rhoward@klnevada.com, ckishi@klnevada.com, usdistrict@klnevada.com

Michael F Lynch Michael@LynchLawPractice.com

E. Daniel Kidd dkidd@klnevada.com, ccolucci@klnevada.com, usdistrict@klnevada.com

☐ **b. United States mail, postage fully prepaid to:**

☐ **c. Personal Service** *(List persons and addresses. Attach additional paper if necessary)*

☐ Delivery was made by handing the document(s) to the attorney or by leaving the documents(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the documents(s) in a conspicuous place in the office.

☐ For a party, delivery was made by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ **d. By direct email (as opposed to through the ECF System)**

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **e. By fax transmission**

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used . A copy of the record of the fax transmission is attached.

☐ **f. By messenger** *(List persons and addresses. Attach additional paper if necessary)*
I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

*(A declaration by the messenger must be attached to this Certificate of Service).*

**I declare under penalty of perjury that the foregoing is true and correct.**

**Signed on January 24, 2014.**

/s/ Michael F. Lynch

753174.3\0313491                                   15