UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>                    Plaintiff,<br>    v.<br>YOEL INY and TIKVA INY, husband and wife, et al.,<br><br>                    Defendants. | Case No. 2:13-cv-01561-MMD-NJK<br><br>ORDER<br><br>(Defs' Motion for Summary Judgment – dkt. no. 24) |

**I.    SUMMARY**

Before the Court is Defendants' Motion for Summary Judgment ("Motion") (dkt. no. 24). For the reasons set out below, the Motion is denied.

**II.    BACKGROUND**

Plaintiff Wells Fargo Bank, National Association, filed the Complaint on August 28, 2013, against Defendants Yoel Iny, individually and as trustee of the Y&T Iny Family Trust ("Iny Trust"), Yoel Iny's wife Tikva Iny, Noam Schwartz, individually and as trustee of the Noam Schwartz Trust ("Schwartz Trust"), Noam Schwartz's wife Rachel Elmalam, 613 Investments, LLC, Ronnie Schwartz, as trustee of the NS 1998 Family Trust,[1] Rachel Schwartz, as trustee of the Leenoy Coreen Qualified Personal Retirement Trust, Triangle Trading Ltd., Haskel Iny, Nira Sayegh and doe defendants. (Dkt. no. 1.) The

---

[1] Plaintiff substituted NST Trust Holdings, Inc. in place of Ronnie Schwartz, who has been dismissed. (Dkt. no. 86 at 7-8.)

Complaint collectively refers to Yoel Iny, the Iny Trust, Noam Schwartz and the Schwartz Trust as "Guarantors." (*Id.* at 2 ¶10.)

The Complaint alleges the following. On or about February 28, 2008, Plaintiff made a loan to borrower GAC Storage El Monte, LLC for $12,650,000 ("GAC Loan") and Guarantors executed and delivered a guaranty to Plaintiff jointly and severally guaranteeing GAC Storage El Monte, LLC's payment and performance ("GAC Guaranty"). (*Id.* at 4.) On or about September 10, 2007, Plaintiff made a loan to borrower The Makena Great American Anza Company, LLC for $15,150,000 ("Makena Loan") and Guarantors executed and delivered a guaranty to Plaintiff jointly and severally guaranteeing The Makena Great American Anza Company, LLC's payment and performance ("Makena Guaranty" and, collectively with GAC Guaranty, "Guarantees"). (*Id.* at 5.) The borrowers defaulted under both loans and, despite demand, the borrowers and the Guarantors did not, and have not, cured the defaults. (*Id.* at 4-6.)

On June 19, 2012, Plaintiff brought an action against Guarantors in Arizona Superior Court for breach of the Guarantees ("Arizona Litigation"). (*Id.* at 6.) In the instant action, Plaintiff does not seek enforcement of the Guarantees or assert any deficiency claims against the Guarantors. Instead, the Complaint asserts fraudulent transfer claims, alleging that Plaintiff has a right to payment under the Guarantees, and that Defendants were involved in the transfer of assets with the purpose of hindering, delaying or defrauding their creditors, including Plaintiff.

On May 9, 2013, Plaintiff completed non-judicial foreclosure sales of the GAC and Makena properties. (*See* dkt. no. 24 at 3-4; dkt. no. 36 at 6.)

One June 13, 2014, the Court entered an order resolving various motions and reserving judgment on the Motion until the parties had an opportunity to brief the issue of whether this action should be stayed pending resolution of the Arizona Litigation ("Order"). (Dkt. no. 86.) The parties filed supplemental briefing regarding the stay. (Dkt. nos. 90, 91.) The Court held a hearing to address the Motion on October 2, 2014. (Dkt. no. 108.)

**III.  DISCUSSION**

    **A.  The Court will not stay this action**

The Court finds that it would not be appropriate to stay this action pending resolution of the Arizona Litigation. The parties do not argue that traditional doctrines of abstention apply in this instance, nor is the Court aware of any that may apply. Where traditional doctrines of abstention do not apply, a district court may stay an action pending resolution of a concurrent state court proceeding based on consideration of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citations omitted). However, the Ninth Circuit has recognized that the *Colorado River* doctrine is a "narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005) (*citing Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002)) (internal quotation marks omitted). Indeed, the Ninth Circuit has stated that "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a [*Colorado River*] stay." *Cent. Ariz.*, 418 F.3d at 1033 (*quoting Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993)). "Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (citation omitted).

A stay would not be appropriate in this case. As the Court noted in its previous Order, "[t]he issue of whether the Guarantors' debt is legally enforceable is a matter that is already pending in the Arizona Litigation, where Plaintiff is suing to enforce the [Guarantees]" and "Plaintiff's fraudulent transfer claims in the present action appear to be ancillary to the claims in the Arizona Litigation." (Dkt. no. 86 at 4.) While, as the Court noted, a decision in the Arizona Litigation on the enforceability of the Guarantees could prove to be dispositive as to Plaintiff's fraudulent transfer claims (*id.*), the Court would

have to determine whether the alleged fraudulent transfers occurred in the event the Arizona court finds that Plaintiff may recover on the Guarantees. On September 23, 2014, Plaintiff notified this Court that the Guarantors' pending motion for summary judgment, which raises a similar issue,[2] was denied in the Arizona Litigation. (Dkt. no. 100.) At the hearing on the Motion, Defendants' counsel further represented that the Arizona court rejected the Guarantors' arguments that the Guarantees are not enforceable. Because the Court will have to address Plaintiff's fraudulent transfer claims if the Guarantees are found to be enforceable, there exists a substantial doubt as to whether the Arizona Litigation will resolve this action and the Court therefore determines a stay is not appropriate at this time.

### B. Summary judgment is denied

#### 1. Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (*citing* Fed. R. Civ. P. 56(c)). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light

---

[2] As the Court stated in its Order, Defendants represented that the Arizona Litigation "involves the same issue regarding liability" on the Guarantees that has been raised in this action. (Dkt. no. 86 at 4.)

4

most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Although the parties may submit evidence in an inadmissible form, the Court may only consider evidence which might be admissible at trial in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

### 2. Analysis

Defendants raise a number of arguments, but the threshold question is whether Plaintiff may maintain this action while the enforceability of the Guarantees is disputed. The Court agrees with Plaintiff that it may assert its fraudulent transfer claims.

Defendants argue that Plaintiff does not have an enforceable debt against the Guarantors and therefore cannot maintain a fraudulent transfer action. Under the Uniform Fraudulent Transfer Act ("UFTA"), a creditor may bring a fraudulent transfer action, and a creditor is defined as one who holds a "claim" against a debtor. *See* Ariz.

///
///

1  Rev. Stat. Ann. § 44-1001(4); NRS § 112.150(4).³ Under Nevada law, a "claim" is
2  defined as "a right to payment, whether or not the right is reduced to judgment,
3  liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,
4  legal, equitable, secured or unsecured." See NRS § 112.150(3). Defendants do not
5  dispute that Plaintiff had a right to payment under the Guarantees at the time the alleged
6  fraudulent transfers took place. Instead, Defendants argue that, as a result of Plaintiff's
7  actions in pursuing non-judicial foreclosure and failing to preserve deficiency rights,
8  Plaintiff has released the Guarantors from liability under the Guarantees and therefore
9  Plaintiff no longer holds a "claim" under the UFTA. (See dkt. no. 24 at 7.) The Court
10 disagrees.

11 In Nevada, when a statute is clear and unambiguous, a court gives effect to the
12 plain and ordinary meaning of the words. *See Pub. Agency Comp. Trust v. Blake*, 265
13 P.3d 694, 696 (2011); *Pankopf v. Peterson*, 175 P.3d 910, 912 (2008). By virtue of the
14 clear language of the UFTA provision in Nevada, the existence of a "disputed" claim
15 does not bar this Court's ability to consider Plaintiff's fraudulent transfer claims to allow
16 Plaintiff to protect its ability to recover once the disputed claim is resolved in its favor.
17 *See DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.*, 384
18 F.3d 338, 351–52 (7th Cir. 2004) (finding that, because Indiana's UFTA provisions
19 define a claim as "disputed or undisputed," a "'creditor' with a colorable claim cannot lose

---

³The parties agree that the Guarantees themselves state that the Guarantees "shall be governed by and construed under the laws of the State of Arizona without regard to conflict of laws principles." (Dkt. no. 24 at 6; dkt. no. 36 at 3-4.) However, the parties' positions on whether Arizona's UFTA provisions or Nevada's UFTA provisions should be applied to Plaintiff's fraudulent transfer claims is not entirely clear. Defendants cite to Nevada's UFTA provisions in arguing that the elements of Plaintiff's fraudulent transfer claims have not been established. (Dkt. no. 24 at 16; dkt. no. 40 at 12.) Plaintiff states that Nevada and Arizona both enacted identical UFTA provisions and cites to both Nevada and Arizona statutes but maintains that it "is not admitting that Nevada law is applicable." (Dkt. no. 36 at 8 n.6.) The Complaint does not reference any specific UFTA provisions. As the parties have not raised any conflict of law arguments as to the relevant UFTA provisions, the Court need not resolve which state's UFTA provisions applies at this time. For the purposes of this Order, the Court will rely on Nevada's UFTA provisions because they were cited by Defendants and uncontested. However, going forward, the Court will have to determine which state's UFTA provisions form the legal basis of Plaintiff's claims if the parties in fact disagree on this issue.

its status as 'creditor' . . . simply because the debtor or a third-party has a legal defense to the claim"). Indeed, the UFTA allows creditors to protect their ability to recover before any payment is even owed. *See, e.g., Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, 770 F. Supp. 2d 1315, 1329–30 (N.D. Ga. 2011) *rev'd on other grounds*, 677 F.3d 1286 (11th Cir. 2012) (*citing Kipperman v. Onex Corp.*, 411 B.R. 805, 832 n.22 (N.D. Ga. 2009) (ripeness is not required to be a creditor); *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 540 (D.N.J. 2008) ("Determining whether a particular transfer is fraudulent only requires a court to answer two questions: whether the debtor has placed some asset beyond the reach of its creditor which would have been available to it at some point in time but for the conveyance; and whether the debtor has transferred property with an intent to defraud, delay, or hinder the creditor.") Thus, while Defendants dispute Plaintiff's right to payment, such a challenge alone is insufficient to legally bar Plaintiff from asserting its fraudulent transfer claims, particularly where the right to payment is currently being litigated in another forum.

Defendants have not provided any controlling case law to the contrary. Defendants cite to the Supreme Court of North Dakota case of *Jahner v. Jacob*, 515 N.W.2d 183, 185 (N.D. 1994), to support their assertion that a "valid, presently enforceable debt against the original transferor is an essential element" of Plaintiff's claims." (Dkt. no. 40 at 12.) *Jahner* is inapposite. In *Jahner*, the relevant fraudulent transfer provision defined a "creditor" as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent[.]" *Jahner*, 515 N.W.2d at 185. This definition does not include "disputed" claims, unlike the relevant UFTA provision in this action. Further, the claim in *Jahner* was not disputed. The plaintiff in *Jahner* obtained a judgment against the transferor but that judgment expired five (5) years before the plaintiff brought an action against a transferee to set aside a fraudulent transfer. *Id.* at 184. Therefore, by the time the plaintiff's fraudulent transfer claim was properly before the trial court, revesting title in the transferor would have been an "idle act." *Id.* at 186. Here, revesting title in the Guarantors would not be an "idle act" because

1  Plaintiff will be able to recover from the Guarantors in the event that Plaintiff is
2  successful in enforcing the Guarantees in the Arizona Litigation.
3  　　　　The Supreme Court of Illinois opinion of *A.P. Properties, Inc. v. Goshinsky*, 714
4  N.E.2d 519 (Ill. 1999), on which Defendants also rely, does not support Defendants'
5  arguments. (Dkt. no. 40 at 12.) In *Goshinsky*, the court found that in order to state a
6  UFTA claim, "the creditor must demonstrate that the debtor owes or potentially owes a
7  'payment' to the creditor." *Id.* at 529. The court found that the parties in *Goshinsky* never
8  established that a debtor/creditor relationship existed in the first place. *Id.* at 530. Here,
9  the parties do not dispute that the Guarantees created a debtor/creditor relationship and
10 that, pursuant to the Guarantees, the Guarantors will owe payment to Plaintiff in the
11 event that Plaintiff is successful in the Arizona Litigation.
12 　　　　Lastly, in *Sabitov v. Graines*, 894 N.E.2d 1310, 1322–23 (Ohio Ct. App. 2008), the
13 Court of Appeals of Ohio found that fraudulent conveyance claims could not be
14 maintained against two defendants, Graines and Van Aken, because all claims for
15 liability against Graines and Van Aken were dismissed by the lower court. While
16 Defendants rely on this case for support (dkt. no. 40 at 12), it is inapposite because
17 Plaintiff's claims for liability are not properly before this Court. This Court therefore
18 cannot conclude, as the *Sabitov* court did, that Plaintiff will not be able to recover against
19 the Guarantors.
20 　　　　Indeed, even if this Court were to consider claims that are not properly before it
21 and find that Plaintiff cannot enforce the Guarantees, the Arizona court may come to a
22 different conclusion and hold the Guarantors liable. In that circumstance, the Guarantors
23 would owe payment to Plaintiff and this Court will have failed to protect Plaintiff's right to
24 recover against assets that were allegedly fraudulently transferred. Such a result would
25 not only be absurd but contrary to the purpose of the UFTA, which allows creditors to
26 protect their ability to recover before a right to payment has been "reduced to judgment."
27 *See* NRS § 112.150(3).
28 ///

The Court's determination is further bolstered by cases involving fraudulent conveyances in the bankruptcy context, where these claims are more commonly raised. The definition of "claim" in the bankruptcy code is similar to the UFTA. *See* 11 U.S.C. § 101(5) ("claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"). In the Ninth Circuit, this definition of "claim" has been read to include ongoing, disputed litigation. *See In re Pringle*, 495 B.R. 447, 468 (B.A.P. 9th Cir. 2013); *In re Fehrs*, 391 B.R. 53, 75 n.44 (Bankr. Idaho 2008).

The Court therefore finds that Defendants have failed to demonstrate that there is no genuine issue of material fact as to whether Plaintiff holds a "claim" as that term is defined in Nevada's UFTA provision. Plaintiff has a right to payment that is currently being disputed in a separate litigation. A claim to enforce the Guarantees is not presently before this Court. Plaintiff cannot be foreclosed as a matter of law from protecting its right to recover against assets that were allegedly fraudulently transferred while the disputed right to payment is being litigated in the Arizona Litigation. Summary judgment is denied.

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of the Motion.

It is therefore ordered that Defendants' Motion for Summary Judgment (dkt. no. 24) is denied.

DATED THIS 21st day of October 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

9